## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **JAMES FARAH,** | Civ. No. 15-cv-2602 (KM) |
| **Plaintiff,** | |
| **v.** | **OPINION** |
| **LASALLE BANK NATIONAL ASSOCIATION, et al.,** | |
| **Defendants.** | |

### KEVIN MCNULTY, U.S.D.J.:

James Farah brings this action arising from "Defendants' negligent, fraudulent and unlawful conduct concerning a residential mortgage loan transaction and foreclosure action." (Cplt. ¶ 1, ECF no. 1) This action proceeds in parallel with a state court mortgage foreclosure proceeding that has been deemed uncontested following an award of summary judgment, but has not as of this writing resulted in a final judgment of foreclosure. Defendants JPMorgan Chase Bank, N.A., and LaSalle Bank National Association (the "Banks") move under Fed. R. Civ. P. 12(b)(1) to dismiss the complaint on *Rooker-Feldman* jurisdictional grounds, and under Rule 12(b)(6) to dismiss it for failure to state a claim. (ECF no. 13) Defendant Mortgage Electronic Registration System ("MERS") joins in the Banks' motion and separately moves to dismiss on the grounds that it is not a proper party. (ECF no. 14) Concerned that the foreclosure judgment was not yet final for purposes of *Rooker-Feldman,* I inquired as to the current status and invited submissions on *Colorado River* abstention. Defendants submitted a short supplemental filing. (ECF no. 30)

For the reasons stated below, the motions to dismiss will be granted in part and for the most part denied. I write at some length, however, to clarify some recurring issues.

1

## I.     Introduction

### A.     The complaint

The Complaint is lengthy, but its allegations may be summarized as follows. Much of its content is familiar, and seems to have been reprinted or photocopied from complaints the court has seen in other cases. I omit general allegations about the mortgage crisis and general practices of mortgage lenders in order to focus on the particulars of this case.

"The gravamen of PLAINTIFF's lawsuit is, 1) Defendants and the TRUST are not holders or holders in due course of the NOTE and 2) Defendants and the TRUST are not beneficiaries under the MORTGAGE. 3) Defendants have no right to declare a default and no right to attempt to consummate a foreclosure...." (Cplt. ¶ 69)

Mr. Farah is the owner of a residential property at 522A Green Village Road, Green Village, County of Morris, NJ. (Cplt. ¶¶ 22–23) On April 26, 2006, plaintiff entered into a residential loan, evidenced by a note and secured by a mortgage with Washington Mutual Bank, FA ("WAMU"). Defendant MERS allegedly served as nominee. (Cpt. ¶¶ 45–47)[1]

Defendant JPMorgan purchased the loan on September 25, 2008, after the note and mortgage had been securitized and placed in a trust. (Cplt. ¶ 48)

On August 7, 2013, a notice of intention to accelerate and foreclose was sent to Farah. (Cplt. ¶ 49)

---

[1]     Although this information is omitted from the complaint, JPMorgan notes that the mortgage was refinanced with WAMU on January 17, 2008. Indeed, it was on that refinanced mortgage that the state foreclosure proceeding was based. (ECF no. 13-3) In a decision denying reconsideration of summary judgment, the state judge factually clarified that the refinancing occurred on January 17, 2008, and that on September 25, 2008, JPMorgan purchased assets of WAMU, including this loan, out of FDIC receivership. (ECF no. 13-8 at 4)

On February 27, 2014, JPMorgan commenced a foreclosure action in the Superior Court of New Jersey, Morris County (No. F-7425-14). Summary judgment was granted to JPMorgan, and Farah's answer was struck. Farah now says that new evidence "requires that judgment be set aside." (Cplt. ¶¶ 50–51) The new evidence consists of an "independent securitization audit" which indicates that the loan was securitized as part of a "Mortgage Backed Security" issued by LaSalle and titled WAMU Mortgage Pass-Through Certificates Series 2006-AR7. It follows, says plaintiff, that none of the Defendants own the loan or had standing to bring the foreclosure. (Cplt. ¶ 52) This was allegedly unknown to the plaintiff at the time of summary judgment in the state case. (Cplt. ¶ 62)

JPMorgan allegedly "split" the note for a second time in 2008. (Cplt. ¶ 63) Plaintiff alleges that LaSalle is the current trustee, and that JP Morgan is, or purports to be acting as, the servicer. (Cplt. ¶¶ 64–66)

Elsewhere, the complaint states that the mortgage loan executed on April 26, 2006, in the amount of $840,000, was split and sold in tranches. The mortgage to which those allegations refer, however, was refinanced. This new loan, says the complaint, was executed on January 17, 2008, and signed by a "robo-signer." This, according to Farah, demonstrates that the "State Case (*i.e.,* the mortgage foreclosure action) should be dismissed for lack of standing." (Cplt. ¶¶42–44) The complaint alleges that when a note is securitized it ceases to be a negotiable instrument, and that treating it as both ("double dipping") is an SEC violation. (Cplt. ¶¶ 67–68)

The next section of the Complaint analyzes "Assignment of Mortgage 1" on August 6, 2012. (Cplt. ¶¶ 92 *et seq.*) There is no evidence, says the complaint, that JP Morgan ever purchased the loan from WAMU in advance of a 2012 assignment. (Cplt. ¶ 105) "LASALLE claims ownership of this Note on Its website, and JPMORGAN would be at best, a servicer." (Cplt. ¶ 108) The plaintiff demands that at least one participant in the transaction be

"questioned" regarding these matters. (Cplt. ¶ 112) The complaint stated that plaintiff agreed to a short sale, but also made many demands on JPMorgan to document the chain of title, which were not answered to his satisfaction. Plaintiff cancelled the sale. (Cplt. ¶¶ 117–28)

The next section of the complaint analyzes an alleged "Assignment of Mortgage 2" on June 4, 2014. (Cplt. ¶¶ 129 *et seq.*) This assignment from JPMorgan to Bayview Loan Servicing, LLC, is said to be faulty and fraudulent, in that it is designed to disguise the ownership of the loan. (Cplt. ¶ 136)

The next section of the complaint analyzes "Assignment of Mortgage 3" on June 24, 2014. (Cplt. ¶¶ 144 *et seq.*) This is said to be a replica of Assignment No. 2, and therefore void and fraudulent. Plaintiff demands a "review of evidence."

The following section states that the "Pooling and Servicing Agreement" (PSA) concerning the Trust where the loan is held has not been properly administered and that the PSA has been violated. Once again, the upshot seems to be that the chain of assignments of the loan is broken or incomplete. (Cplt. ¶¶ 155–190)

The mortgage, the complaint alleges, has been separated from the note in the course of securitization, making the mortgage unenforceable. (Cplt. ¶¶ 194–199)

As a result of all the foregoing, the defendants lack standing and "do not have a right to foreclose on the Subject Property." (Cplt. ¶¶ 202–219)

MERS, says the Complaint, impermissibly serves as a nominee, because it has no interest and cannot assign any interest. (Cplt. ¶¶ 220–230)

The Complaint asserts 16 causes of action, summarized as follows:

- Count 1: Declaratory Judgment. This count seeks a declaration that the mortgage is invalid, and that the defendants have no standing and "do not have authority to foreclose upon and sell the Subject Property." (Cplt. ¶¶ 231–38)

- Count 2: Injunctive Relief. This count seeks to enjoin any Sheriff's sale of the property pending the Court's decision on Count 1 and

4

"[u]ntil Defendants are able to provide Plaintiff and this Court with written proof of its right to foreclose." (Cplt. ¶¶ 239–46)

- Count 3: Quiet title. Plaintiff seeks a decree that he is the title owner of record of the Property. (Cplt. ¶¶ 247–52)

- Count 4: Negligence per se. This count alleges that all of the activity alleged above violated Defendants' duty of care in tending to, *e.g.,* the documentation, transfer, and assignment of the loan. (Cplt. ¶¶ 253–59)

- Count 5: Accounting. This count alleges that, because of the activities alleged above, all mortgage payments were improper, and that Defendants must account for them. (Cplt. ¶¶ 260–64)

- Count 6: Breach of covenant of good faith and fair dealing. This count alleges that the commencement of foreclosure proceedings without proper documentation breach that implied covenant. (Cplt. ¶¶ 265–71)

- Count 7: Breach of fiduciary duty. This count is directed against MERS, essentially because it acted in the absence of any genuine interest in the loan. (Cplt. ¶¶ 272–83)

- Count 8: Wrongful foreclosure. (Cplt. ¶¶ 284–96)

- Count 9: Violation of Real Estate Settlement Procedures Act (RESPA). This count alleges overcharges for "settlement services." (Cplt. ¶¶ 297–301)

- Count 10: Home Ownership Equity Protection Act (HOEPA). This count alleges that certain required disclosures were not made in connection with closing. It seeks rescission of the mortgage, as well as damages. (Cplt. ¶¶ 302–15)

- Count 11: Fraud in the Concealment. (Cplt. ¶¶ 316–31)

- Count 12: Intentional infliction of emotional distress. (Cplt. ¶¶ 332–45)

- Count 13: Slander of title. (Cplt. ¶¶ 346–59)

- Count 14: RICO. (Cplt. ¶¶ 360–64)

- Count 15: Conversion. (Cplt. ¶¶ 365–76)

- Count 16: Breach of contract. (Cplt. ¶¶ 377–83)

The prayer for relief is as follows:

1. For Compensatory Damages in an amount to be determined by proof at trial;

2. For Special Damages in an amount to be determined by proof at trial;

5

3. For General Damages in an amount to be determined by proof at trial;

4. For Punitive Damages as allowed by law;

5. For Restitution as allowed by law;

6. For Attorney's Fees and Costs of this action;

7. For Declaratory Relief, including but not limited to the following Decrees of this Court that:

- Plaintiff is the prevailing party;

- The Trustees of the Trusts have no enforceable secured or unsecured claim against the Property;

- The Sponsor has no enforceable secured or unsecured claim against the Property;

- The Depositor has no enforceable secured or unsecured claim against the Property;

- The Mortgage Originator has no enforceable secured or unsecured claim against the Property;

- Determines all adverse claims to the real property in this proceeding;

- Plaintiff is entitled to the exclusive possession of the property;

- Plaintiff owns in fee simple, and is entitled to the quiet and peaceful possession of, the above described real property.

- Defendants, and each of them, and all persons claiming under them, have no estate, right, title, lien, or interest in or to the real property or any part of the property.

- Plaintiff is entitled to the exclusive possession of the property;

- Plaintiff owns in fee simple, and is entitled to the quiet and peaceful possession of, the above described real property.

8. For a judgment forever enjoining each of the Defendants from claiming any estate, right, title or interest in the Subject Property;

9. For a declaration that the future foreclosure based on PLAINTIFF'S LOAN be deemed and declared illegal and void, and that further proceedings in connection with the foreclosure be enjoined;

10. For such other further relief as the court may deem just and proper.

(ECF no. 1 at 44-45)

### B.    The state foreclosure proceedings

In summarizing the proceedings in the state court foreclosure action, I rely on copies of pleadings and orders filed in that proceeding, which are attached to the Bank's papers. For the reasons stated below, *see* pp. 9–10, *infra*, I may take judicial notice of them, and they may in any event be considered as matters intrinsic to Farah's federal complaint. I do not consider them for the truth of factual contentions made therein, but only as evidence of the issues that were raised before, or decided by, the State court.

Those state court pleadings establish the following procedural history:

1. On February 27, 2014, JPMorgan filed a Complaint for Foreclosure New Jersey Superior Court, Morris County, under Docket No. F-007425-14. (ECF no.13-3)

2. On April 8, 2014, Farah filed his answer, defenses, and counterclaims. (ECF no. 13-4)

3. On September 26, 2014, JPMorgan filed a motion for summary judgment (ECF no. 13-5)

4. On October 27, 2014, the state court, per Stephan C. Hansbury, P.J. Ch., filed an order providing (1) that summary judgment on the merits of the mortgage foreclosure was granted; (2) that Farah's answer, defenses and counterclaims were stricken with prejudice; (3) that Farah's counterclaims were dismissed with prejudice; (4) that the matter would be transferred to the Foreclosure Unit to proceed as an uncontested matter.[2] (ECF no. 13-6)

---

[2]    New Jersey is a judicial foreclosure state. At least where a contesting answer is filed, the case begins its journey in the Superior Court. Defenses and counterclaims are heard or disposed of there, typically on summary judgment. Such include, *e.g.,* payment and discharge, failure of consideration, incorrect computation of the amounts due, fraud, mistake, waste, credit for rental value of the mortgaged premises, usury, unjust enrichment, setoff, recoupment, non-compliance with regulatory pre-requisites to foreclosure, and abatement of the mortgage debt. Although a broad range of defenses and counterclaims are appropriately heard, they must be "germane" to the mortgage foreclosure. *See LaSalle Nat. Bank v. Johnson*, No. F-12888-05, 2006 WL 551563, at *2 (N.J. Super. Ct. Ch. Div. Mar. 3, 2006) (citing Scott T. Tross, New Jersey Foreclosure Law and Practice § 1 at 162-65 (2001)); *see also* S.B. Pressler & P.G. Verneiro, N.J. Ct. R. annot. 4:64-1, comment 3.3. If the defenses survive, the action is "contested"; if not, it is deemed "uncontested" and may be referred to the Office of Foreclosure. An uncontested action is one in which (1) all defendants have failed to answer or plead; or, as more relevant here, "(2) none of the pleadings responsive to the

5. On November 14, 2014, Farah moved for reconsideration of summary judgment. (ECF no. 13-7)

6. On January 5, 2015, the state court, per Stephan C. Hansbury, P.J. Ch., filed an order and statement of reasons denying Farah's motion for reconsideration. (ECF no. 13-8)

**Standard on a motion to dismiss**

Defendants have moved to dismiss the Complaint for lack of jurisdiction. Rule 12(b)(1) governs jurisdictional challenges to a complaint. These may be either facial or factual attacks. *See* 2 Moore's Federal Practice § 12.30[4] (3d ed. 2007); *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). A facial challenge asserts that the complaint does not allege sufficient grounds to establish subject matter jurisdiction. *Iwanowa v. Ford Motor Co.*, 67 F. Supp. 2d 424, 438 (D.N.J. 1999). A court considering such a facial challenge assumes that the allegations in the complaint are true, and may dismiss the complaint only if it nevertheless appears that the plaintiff will not be able to assert a colorable claim of subject matter jurisdiction. *Cardio–Med. Assoc., Ltd. v. Crozer–Chester Med. Ctr.*, 721 F.2d 68, 75 (3d Cir. 1983); *Iwanowa*, 67 F. Supp. 2d at 438.

Defendants have also moved to dismiss the Complaint for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6). Rule 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if it fails to state a claim upon which relief can be granted. The defendant, as the moving party, bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). In deciding a Rule 12(b)(6) motion, a court must take the allegations of the complaint as true and draw reasonable inferences in the light most favorable to the plaintiff. *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (traditional "reasonable inferences" principle not undermined by *Twombly, see infra*).

---

complaint either contest the validity or priority of the mortgage or lien being foreclosed or create an issue with respect to plaintiff's right to foreclose it; or (3) all the contesting pleadings have been stricken or otherwise rendered noncontesting." N.J. Ct. R. 4:64-1(c).

Federal Rule of Civil Procedure 8(a) does not require that a complaint contain detailed factual allegations. Nevertheless, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the complaint's factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, so that a claim is "plausible on its face." *Id.* at 570; *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). That facial-plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Iqbal*, 556 U.S. at 678.

In connection with the motions, the Banks proffer materials extrinsic to the complaint. These consist of records of the state court foreclosure proceeding. These are cited, not for the facts contained therein, but only in order to establish the nature and scope of prior proceedings between the parties, and the rulings of the state court.

Such records are subject to judicial notice:

> [O]n a motion to dismiss, we may take judicial notice of another court's opinion—not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity. *See Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991); *United States v. Wood*, 925 F.2d 1580, 1582 (7th Cir. 1991); *see also Funk v. Commissioner*, 163 F.2d 796, 800–01 (3d Cir. 1947) (whether a court may judicially notice other proceedings depends on what the court is asked to notice and on the circumstances of the instant case).

*S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 426-27 (3d Cir. 1999). *See generally* Fed. R. Evid. 201.

Even setting aside judicial notice, records of the foreclosure action that are intrinsic to the complaint may be considered without converting a facial

Rule 12(b)(1) challenge into a factual one, or a Rule 12(b)(6) motion into one for summary judgment. *See Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) ("However, an exception to the general rule is that a 'document integral to or explicitly relied upon in the complaint' may be considered 'without converting the motion to dismiss into one for summary judgment.' ") (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)); *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).[3]

Where the plaintiff, like Mr. Farah, is proceeding *pro se*, the complaint is "to be liberally construed," and, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007). Nevertheless, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013). "While a litigant's pro se status requires a court to construe the allegations in the complaint liberally, a litigant is not absolved from complying with *Twombly* and the federal pleading requirements merely because s/he proceeds pro se." *Thakar v. Tan*, 372 F. App'x 325, 328 (3d Cir. 2010) (citation omitted).

---

[3]     Indeed, where a complaint is based on particular documents, a defendant may permissibly submit and rely on such documents in its motion to dismiss. The reasons for the rule are (1) that the plaintiff, having relied on the document, cannot claim unfair surprise; and (2) the plaintiff cannot base a claim on a document while shielding the document itself from view:

> What the rule seeks to prevent is the situation in which a plaintiff is able to maintain a claim of fraud by extracting an isolated statement from a document and placing it in the complaint, even though if the statement were examined in the full context of the document, it would be clear that the statement was not fraudulent.

*Burlington*, 114 F.3d at 1426 (on 12(b)(6) motion to dismiss securities fraud complaint alleging misstatements in annual report, court may examine the report itself). The very substance of the complaint is based on the mortgage and note and the alleged illegality of the state foreclosure proceedings. The mortgage and note, and the publicly filed pleadings and rulings of the court in those foreclosure proceedings may therefore be considered.

**Analysis**

    **1.**    *Rooker-Feldman*

      The Banks' primary grounds for dismissal of the complaint is the *Rooker-Feldman* doctrine. The issue is jurisdictional, and I consider it under Rule 12(b)(1).

      A federal district court does not sit to hear appeals from state court judgments. *Rooker-Feldman* thus operates to prevent a disgruntled party in state court litigation from collaterally attacking the results of that litigation in federal court, claiming constitutional or other error. *See also B.S. v. Somerset County,* 704 F.3d 250 (3d Cir. 2013). To put it another way, *Rooker-Feldman* bars "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus., Inc.*, 544 U.S. 280, 284 (2005). *Rooker-Feldman* has four essential prerequisites:

> (1) the federal plaintiff lost in state court; (2) the plaintiff "complain[s] of injuries caused by [the] state-court judgments; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments.

*Great Western Mining & Mineral Co. v. Fox Rothschild LLP,* 615 F.3d 159, 166 (3d Cir. 2010).

      Analyzing the case, I became concerned that the state judgment might not be final, a matter as to which the papers were silent. I requested supplemental submissions. The Banks have updated the status and revealed that, although the state court has awarded summary judgment and marked the foreclosure uncontested, a final judgment of foreclosure has not yet been entered. (ECF no. 30 at 2–3) They contend, however, that *Rooker-Feldman* may nevertheless apply, because the Third Circuit has found the doctrine applicable to "interlocutory" orders. I do not agree.

I am satisfied that the summary judgment in the state foreclosure action, even if it makes entry of a final judgment highly likely, is not itself a final judgment of foreclosure.

True, the action here has been deemed uncontested, *see* N.J. Ct. R. 4:64-1(a), but more remains to be done before the judgment is final. Summary judgment established only the right to foreclose; it is not itself a judgment of foreclosure, and it does not settle the amount of the debt.

In the interim, moreover, there are opportunities for the debtor to make good. The creditor will serve written notice of intent to foreclose. *See* N.J. Stat. Ann. § 2A:50-56. That, however, is subject to the debtor's right of cure by payment of the full amount due plus certain costs, *see* N.J. Stat. Ann. § 2A:50-57. In an uncontested case, a residential mortgagee may serve notice of intent to enter a final judgment within 14 days. The debtor may, however, within 10 days of the notice, certify that there is a reasonable likelihood that it will be able to cure the default within 45 days, and thereby obtain a delay. N.J. Stat. Ann. § 2A:50-58(a).[4] Those are all preliminaries to entry of a final judgment.

The final judgment, for purposes of *Rooker-Feldman*, is not the summary judgment rendering the foreclosure uncontested, but the actual final judgment of foreclosure. Such a final judgment of foreclosure (always labeled as such) determines both the *right* to foreclose and the *amount* due on the mortgage. *Sheerer v. Lippman & Lowy*, 125 N.J.Eq. 93, 4 A.2d 273 (E. & A.1939). *See also Wells Fargo Bank, NA v. Garner,* 416 N.J. Super. 520, 523, 6 A.3d 481, 483 (App. Div. 2010); *Central Penn Nat'l Bank v. Stonebridge, Ltd.*, 185 N.J. Super. 289, 302, 448 A.2d 498 (Ch. Div. 1982). *See generally* 30A N.J. Prac. Law of Mortgages § 31.25.

Such a judgment of foreclosure is final in that it extinguishes rights. All defenses—indeed, the mortgage itself—are obliterated by a final judgment of foreclosure. "[U]pon foreclosure the mortgage merges into the final judgment of

---

[4]    There is an alternative procedure for properties that are abandoned or surrendered, or have no equity, *see* N.J. Stat. Ann. §§ 2A:50-58(b) & 63, but the upshot is similar.

foreclosure and 'every party ... has the right to assume that such decree represents the final determination of the debt....'" *Virginia Beach Fed. v. The Bank of New York/Nat'l Cmty. Div.*, 299 N.J. Super. 181, 184, 690 A.2d 1040, 1041 (App. Div. 1997) (quoting *Colonial B.-L. Ass'n v. Mongiello Bros., Inc.*, 120 N.J.Eq. 270, 276, 184 A. 635 (Ch.1936)).[5]

It is at that point, moreover, that the trial court's decision is final and appealable within the state system. *See Wells Fargo Bank,* 416 N.J. Super. at 523, 6 A.3d at 483 (summary judgment striking defenses is more properly deemed "partial summary judgment" and is not a final, appealable judgment); *LaSalle Bank Nat. Ass'n v. Feranda*, 2010 WL 4702277 (N.J. Super. App. Div. Nov. 22, 2010) (order striking answer and defense and transferring the matter to the foreclosure unit is interlocutory and not appealable).[6]

Once a judgment of foreclosure has been entered, the mortgagee has the right to recover the amount of the debt by way of a Sheriff's sale of the property. *See N.J.S.A.* 2A:50–36; *First Union Nat'l Bank v. Penn Salem Marina,*

---

[5]

It is well established that upon foreclosure, the mortgage agreement merges with the final judgment of foreclosure and "such decree represents the final determination of the debt." *Virginia Beach Fed. v. Bank of New York/Nat'l Comm. Div.*, 299 N.J. Super. 181, 184, 690 A.2d 1040 (App. Div. 1997) (quoting *Colonial Bldg.-Loan Ass'n v. Mongiello Bros.*, 120 N.J. Eq. 270, 276, 184 A. 635 (Ch.1936)). "What had been a private claim under the mortgage contract becomes a special form of judgment [which] entitle[s] the plaintiff to a writ of execution to sell the designated property to satisfy the amount determined to be due." *Resolution Trust Corp. v. Griffin*, 290 N.J.Super. 88, 91, 674 A.2d 1032 (Ch. Div.1994) (citing *Colonial Bldg.-Loan Ass'n, supra*, 120 N.J. Eq. at 276, 184 A. 635). *See also Realty Asset Prop. v. Oldham*, 356 N.J.Super. 16, 21, 811 A.2d 468 (App. Div. 2002), *certif. denied*, 176 N.J. 71, 819 A.2d 1187 (2003) (holding that, under the doctrine of merger, the mortgage agreement is merged into the final foreclosure judgment and the contract interest rate is super[s]eded by the rate for judgments permitted under the court rules).

*Summit Bus. Capital Corp. v. Quinn-Woodbine Realty & Leasing Co.*, No. A-4997-04T2, 2006 WL 1549791, at *4 (N.J. Super. Ct. App. Div. June 8, 2006)

[6]     With many and complex exceptions, both the federal system and New Jersey ordinarily permit appeals only from final decisions of the trial level courts. *See* 28 U.S.C. § 1291 ("Final decisions of district courts"); N.J. Ct. R. 2:2-3 ("final judgments").

*Inc.*, 383 N.J .Super. 562, 570, 893 A.2d 1 (App.Div.2006) *rev'd on other grounds by* 190 N.J. 342, 921 A.2d 417 (2007). Indeed, the judgment will usually include "an order to sell so much of the mortgaged premises as will be sufficient to satisfy the mortgage and subordinate liens ... and that an execution issue ... commanding the [sheriff] to make sale...." *Patetta v. Wells Fargo Bank, NA*, Civ. No. 09-2848, 2010 WL 1931256, at *7 (D.N.J. May 13, 2010) (Wolfson, J.) (quoting 30A N.J. Prac. Law of Mortgages § 31.25.). *See generally* N.J. Stat. Ann. § 2A:50-64 (Sale of mortgaged premises under foreclosure action; form of deed).

Based on these indicia of true finality, a final judgment of foreclosure, despite the pendency of a sheriff's sale or other remedies such as the defendant's motion to vacate the judgment, has been held final for purposes of *Rooker-Feldman. Patetta*, 2010 WL1931256, at *8 (citing *Jacobowitz v. M & T Mortg. Corp.*, 2010 WL 1063895, *2 (3d Cir. Mar.24, 2010)).

So what of the Banks' contention that *Rooker-Feldman* may be triggered by "interlocutory orders as well as final judgments"? (ECF no. 30 at 5) Right off the bat, it does not seem to jibe with the underlying rationale of *Rooker-Feldman*: that only the U.S. Supreme Court, and not the lower federal courts, has jurisdiction to review judgments of the state courts. *See* 28 U.S.C. § 157. That is why the doctrine is formulated in terms of "cases brought by state-court *losers* complaining of injuries caused by state-court *judgments.*" *Exxon Mobil*, 544 U.S. at 293 (emphasis added).

The Banks cite *Port Auth. Police Benev. Ass'n, Inc. v. Port Auth. of New York & New Jersey Police Dep't*, 973 F.2d 169 (3d Cir. 1992). The Banks are not using "interlocutory" in the sense that an appellate lawyer would, to distinguish an ordinary order from an appealable, final decision. *Port Authority* reaffirms the usual rule that *Rooker-Feldman* applies to final decisions of trial-level state courts; it merely rejects those plaintiffs' contention that a judgment was not final for purposes of *Rooker-Feldman* until it was upheld on appeal to the state's highest court:

14

> Because a decision on the merits by the district court would constitute an impermissible review of the New York trial court's holding, dismissal of the complaint was appropriate under the *Rooker–Feldman* doctrine, which instructs us that the only courts empowered to review for constitutional error the New York trial court's preliminary injunction are the appellate New York courts and, ultimately, the Supreme Court of the United States.
>
> The PBA and Trotter argue that the *Rooker–Feldman* doctrine does not apply in the instant case because, in their view, that doctrine only precludes federal review of orders issued by a state's highest court, and does not apply to cases where, as here, litigants seek federal review of an order issued by a lower state court. However, if federal district courts are precluded, as they are, from reviewing the decisions of a state's highest court, even when those decisions appear to the district court to have been plainly in violation of the Constitution, then federal district courts are certainly also precluded from reviewing decisions of lower state courts, which are subject to correction and modification within the state court system.

*Id.* at 178.

So *Port Authority,* which dealt with a separate question, provides no support for the Banks' contention that non-final state court orders may support the application of *Rooker-Feldman.* The two bankruptcy cases cited, which rely on *Port Authority* and non-binding authority from other districts, do not persuade me otherwise. *See* (ECF no. 30 at 5) (citing *Mayeres v. BAC Home Loans,* No. 10-44816 MBK, 2011 WL 2945833, at *4 (Bankr. D.N.J. July 21, 2011); *In re Verity,* No. 10-20880 DHS, 2012 WL 3561669, at *5 (Bankr. D.N.J. Aug. 16, 2012)).

Final judgment may appear to the Banks to be a foregone conclusion. Nevertheless, because the state action is still pending and judgment is not final, I still possess jurisdiction. *Rooker-Feldman* does not apply.[7]

---

[7] The now-apparent absence of a final judgment also affects the Banks' res judicata arguments.

15

## B.   *Colorado River* Abstention

When I requested an update on the status of the state foreclosure action, I also invited the parties to comment on the applicability of the *Colorado River* abstention doctrine, to which Farah had referred in a supplemental submission. (Text Order, ECF no. 29) *See Colorado River Water Conservation District v. United States*, 424 U.S. 800, 96 S. Ct. 1236 (1976). That doctrine "allows a federal court to abstain, either by staying or dismissing a pending federal action, when there is a parallel ongoing state court proceeding." *Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc.,* 571 F.3d 299, 307 (3d Cir. 2009).

The Banks have submitted a response (ECF no. 30); Farah has not. I find that I cannot apply the *Colorado River* factors without reference to facts that cannot be determined on this motion to dismiss. The motion to dismiss, to the extent it relies on *Colorado River,* will therefore be denied.

## C.   RESPA, HOEPA, RICO

I next consider whether this complaint (pleaded under the Court's diversity jurisdiction) raises any substantial issue of federal law. I find that it does not, and dismiss the three federal-law counts.

### 1.   RESPA

Count 9 of the Complaint (Cplt. ¶¶ 297–301) claims a "Violation of Real Estate Settlement Procedures Act" (RESPA). This count alleges overcharges for "settlement services." It alleges, in wholly conclusory fashion, that the defendants "accepted charges for the rendering of real estate services which were in fact charges for other than services actually performed." And it cites the language of RESPA, 12 U.S.C. § 2607.

RESPA is concerned with "service[s] provided in connection with a real estate settlement," including the "origination of a federally related mortgage loan." *Freeman v. Quicken Loans, Inc.,* 132 S. Ct. 2034, 2037–38 (2012)

16

(quoting 12 U.S.C. § 2602(3). RESPA prohibits certain kickbacks and fee splitting which may be disguised as settlement charges in connection with real estate settlement services. *See* 12 U.S.C. § 2607(a) & (b). It affords a cause of action for treble damages. 12 U.S.C. § 2607(d) (2). *See Alston v. Countrywide Fin. Corp.,* 585 F.3d 753, 759 (3d Cir. 2009).

The allegations of this complaint, however, do not meet the threshold requirements of *Twombly* and *Iqbal* that a complaint state *facts* from which a RESPA claim could plausibly be inferred. It does not state what the violation consisted of, what services were charged for but not actually performed, or indeed any facts at all. My examination of the rest of the Complaint does not yield a factual basis for a RESPA claim, either.

As one California district court put it:

> Plaintiffs do not explain what these kickbacks were, when they occurred, or which defendants received them. Instead, plaintiffs simply allege the existence of secret kickbacks and lump the actions of defendants together. Defendants should not be forced to guess how they each violated RESPA. *See Gauvin v. Trombatore,* 682 F. Supp. 1067, 1071 (N.D. Cal. 1988). Accordingly, plaintiffs' kickback claim "stops short of the line between possibility and plausibility" and must be dismissed. *Iqbal,* 129 S. Ct. at 1949.

*Lane v. Vitek Real Estate Indus. Grp.,* 713 F. Supp. 2d 1092, 1101-02 (E.D. Cal. 2010).

The motion to dismiss Count 9 for failure to state a claim is therefore GRANTED without prejudice.

### 2.   HOEPA/TILA

Count 10 pleads a claim of "Violation of the Home Ownership Equity Protection Act" (HOEPA) (Cplt. ¶¶ 302–315) (HOEPA is an amendment to the Truth in Lending Act (TILA), and the two acronyms are sometimes used without any rigid distinction.)

HOEPA, as related in the Complaint, requires, *inter alia*, certain disclosures in writing three days prior to closing. 15 U.S.C. § 1639(a)(1). The complaint cites in particular the following required disclosure:

> (A) "You are not required to complete this agreement merely because you have received these disclosures or have signed a loan application."

> (B) "If you obtain this loan, the lender will have a mortgage on your home. You could lose your home, and any money you have put into it, if you do not meet your obligations under the loan.".

15 U.S.C. § 1639(a)(1). Other violations are alleged more generally.[8]

Farah seeks rescission of the mortgage, citing 15 U.S.C. § 1635. There is also a general claim for return of money paid and unspecified damages, which would properly be brought under 15 U.S.C. § 1640(e). Although the statute of limitations is usually an affirmative defense, the face of the complaint reveals that these claims are untimely.

As to rescission, the statute imposes an absolute limit of 3 years from the date of closing, even if the requisite disclosures are lacking:

> Consumers have an absolute right to rescind for three business days after closing on the loan. [15 U.S.C.] § 1635(a). To exercise this "no questions asked" right of rescission, the obligor on the mortgage note must simply notify the creditor of his intention to do so, consistent with the applicable regulations. *Id.* § 1635(a), (b). No court filing is necessary to effectuate this right. If the lender fails to make the requisite disclosures before the loan commences, the three-day restriction on the right of rescission does not begin to run. A consumer who does not

---

[8]   Count 10 also cites by implication the following HOEPA prohibition:

(h) Prohibition on extending credit without regard to payment ability of consumer

A creditor shall not engage in a pattern or practice of extending credit to consumers under mortgages referred to in section 1602(aa) of this title based on the consumers' collateral without regard to the consumers' repayment ability, including the consumers' current and expected income, current obligations, and employment.

15 U.S.C § 1639(h).  No facts in support of such a "pattern" are alleged.

receive the requisite disclosures has a right to rescind that lasts until three days after the disclosures are received. *Id.* § 1635(a). That right of rescission is not perpetual, however, even if the consumer never receives all of the requisite disclosures. The right "expire[s] three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first." *Id.* § 1635

*Sherzer v. Homestar Mortgage Servs.*, 707 F.3d 255, 256 (3d Cir. 2013). That three-year limitation is not a statute of limitation, barring untimely suits; it "govern[s] the life of the underlying right." *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 417, 118 S. Ct. 1408, 1412 (1998). By the "uncompromising provision of § 1635(f) ... the borrower's right 'shall expire' with the running of the time." *Id.* at 418, 118 S. Ct. at 1412–13 (citing 15 U.S.C. § 1635(f)) Thus "the Act permits no federal right to rescind, defensively or otherwise, after the 3-year period of § 1635(f) has run." *Id.* at 419, 118 S. Ct. at 1413.

The complaint alleges that the closing of this loan occurred on April 26, 2006. Documents attached by defendants reveal that it was refinanced on January 17, 2008. (*See* p. 2 n.1, *supra*.) That was over seven years before this Complaint was filed on April 10, 2015. No other complaint or demand for rescission within the three-year period is alleged. Any TILA/HOEPA claim for rescission is unequivocally barred.

I turn to whatever claims for damages remain. "[A] claim for damages under TILA and HOEPA ... is subject to a one-year limitations period that begins to run from the date the loan closed, 15 U.S.C. § 1640(e)." *In re Cmty. Bank of N. Virginia*, 622 F.3d 275, 303 (3d Cir. 2010), as amended (Oct. 20, 2010). Such a claim may also be brought as a claim for recoupment or setoff "in an action to collect the debt," even if that action is brought after the one-year period has expired. 15 U.S.C. § 1640(e). Disclosure violations "occur" at the "consummation" of the transaction—here, the closing of the loan in question—and do not constitute a "continuing" violation. *In re Smith,* 737 F.2d 1549, 1552 (11th Cir. 1984); *Katz v. Bank of California*, 640 F.2d 1024 (9th Cir. 1981).

Any defects in the written loan disclosures should be immediately apparent, or at least ascertainable, at or about the time they were received. But the TILA § 1640(e) one-year statute (unlike the three year rescission period) is subject to equitable tolling. *Ramadan v. Chase Manhattan Corp.*, 156 F.3d 499, 500 (3d Cir. 1998). This means that it is at least possible that a claim for damages, brought seven years after the loan closing, could still be timely under very limited circumstances. This is a matter less suitable for resolution on a motion to dismiss, however.

As for the HOEPA damages claims, the complaint is fatally vague. The disclosures are written documents, which are furnished to a borrower. Merely stating in boilerplate fashion that the defendants have failed to make disclosures is insufficient. I will therefore dismiss the damages component of Count 10, without prejudice, for failure to state a claim.

The dismissal of the HOEPA rescission claim is with prejudice. The dismissal of the HOEPA damages claims is without prejudice to the filing of an amended version within 60 days. Any amended complaint should make clear (1) the disclosures that were and were not received around the time of closing; and (2) to the extent possible, whatever facts allegedly toll the one year statute of limitations as to those particular nondisclosures.

### 3.    RICO

Count 14 alleges a violation of the Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.* (Cplt. ¶¶ 360–64)

A RICO claim is a complex, compound cause of action. Pursuant to 18 U.S.C. § 1964(c), the federal RICO statute provides for recovery by any person injured in her business or property by reason of a violation of section 1962.[9] In

---

9      18 U.S.C. § 1964 provides:

Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee.

order to state a claim under 1964(c), a plaintiff must plead "(1) a section 1962 violation and (2) an injury to business or property by reason of such injury." *Lightning Lube, Inc., v. Witco Corp.*, 4 F.3d 1153, 1187 (3d Cir. 1993). To establish a claim under 1962(a), "a plaintiff must allege: (1) that the defendant has received money from a pattern of racketeering activity; (2) invested that money in an enterprise; and (3) that the enterprise affected interstate commerce." *Id.* at 1189 (citation omitted). Establishing a pattern of racketeering requires allegations of "at least two acts of racketeering activity within a ten-year period." 18 U.S.C. § 1961(5). Under section 1962(b), "a plaintiff must show injury from the defendant's acquisition or control of an interest in a RICO enterprise, in addition to injury from the predicate acts" of racketeering. *Lightning Lube*, 4 F.3d at 1190. To allege a claim under Section 1962(c), a plaintiff must plead conduct of an enterprise through a pattern of racketeering activity. *District 1199P*, 784 F.Supp.2d at 518-19 (citation omitted). Section 1962(d) prohibits conspiring to violate sections (a)-(c). 18 U.S.C. § 1962(d).

The substantive allegations comprise three one-sentence paragraphs. (Cplt. ¶¶ 361–63) These state the legal conclusions that the plaintiff and each of the defendants was a "person" within the meaning of the statute, and that the defendants "formed an association-in-fact for the purpose of defrauding plaintiff." Nothing remotely approaching a factual or legal allegation of a RICO claim appears.

The motion to dismiss Count 14 for failure to state a claim is granted.

**D.    Claims as to Which Defendant Seeks Leave to Amend**

The remaining state law claims can await summary judgment. In his response (ECF no. 19) to the motions to dismiss, Farah made certain concessions and sought leave to replead certain of his claims. Plaintiff particularly expresses a desire to amend his claims of Fraud (ECF no. 19 at 9) and Breach of Contract (*id.* at 10). Less specifically, he states that he wishes to specify the role of each defendant with more particularity, and to state facts

21

establishing that his claims are timely. Repleading may affect all of these interrelated state-law causes of action.

Because Mr. Farah is a *pro se* plaintiff, and because there has not been a previous amendment of the Complaint, I will grant leave to file an amended complaint within 60 days.

**E.    MERS**

Defendant MERS seeks dismissal, stating that it was not an assignee of the 2008 refinancing mortgage. Although it adverts to documents properly considered on a motion to dismiss, I nevertheless believe that this contention is fact-intensive and best considered in the context of a summary judgment motion. I will therefore deny it as a motion to dismiss.

**CONCLUSION**

For the reasons stated above, Defendants' motions (ECF nos. 13, 14) to dismiss the complaint are GRANTED in part and DENIED in part, in accordance with the accompanying Order.

Dated: March 23, 2016

HON. KEVIN MCNULTY, U.S.D.J.