UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **JAMES FARAH,**<br><br>        **Plaintiff,**<br><br>v.<br><br>**LASALLE BANK NATIONAL ASSOCIATION AS TRUSTEE FOR THE WAMU MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2006-AR7 TRUST; JPMORGAN CHASE BANK, N.A. AS A SERVICER; MORTGAGE ELECTRONIC REGISTRATION SYSTEM, AND JOHN DOES 1-10, INCLUSIVE,**<br><br>        **Defendants.** | Civ. No. 15-2602 (KM) (MAH)<br><br>**OPINION** |

**KEVIN MCNULTY, U.S.D.J.:**

Before the Court is *pro se* Plaintiff James Farah's motion (DE 195) for reconsideration of this Court's May 18, 2020 Opinion and Order (DE 193; DE 194) granting summary judgment in favor of JPMorgan Chase Bank, N.A., ("Chase"), LaSalle Bank National Association as Trustee for the WAMU Mortgage Pass-Through Certificates Series 2006-AR7 Trust ("WAMU Trust"), and Mortgage Electronic Registration System, ("defendants") against Mr. Farah. Mr. Farah brought various allegations of fraud in connection with a mortgage he purchased from Washington Mutual Bank, FA ("WaMu"), and I granted summary judgment on grounds of claim preclusion, the entire controversy doctrine, issue preclusion, and on several other bases. Mr. Farah now challenges that decision, again raising arguments that have already been laid to rest by prior related state court proceedings. For the reasons provided herein, I will deny Mr. Farah's motion.

1

**I.    Summary**

I write primarily for the parties and assume familiarity with the facts and procedural history. I relay only the most salient facts for determination of this motion.

Mr. Farah took out a loan secured by a recorded mortgage with WaMu in 2006, and then discharged and refinanced that loan in 2008. (DE 193 at 2.) WaMu subsequently collapsed due to losses resulting from the subprime mortgage crisis of 2008, and its assets were taken over by the FDIC, which then in turn assigned the assets to JPMorgan Chase Bank ("Chase"). (*Id.*) Farah defaulted on the mortgage in 2010. He then occupied the property for a time, and at other times rented it out for $5300 a month. (*Id.*)

Chase sought to foreclose on the property. On May 23, 2018,[1] it filed a foreclosure action in the Superior Court of New Jersey, Morris County. (*Id.* at 4.) The Hon. Maritza Berdote-Byrne, P.J. Ch., entered an order on July 15, 2019, granting Chase's motion for summary judgment, struck Farah's answer, and referred the case to the Office of Foreclosure to proceed as an uncontested matter. (*Id.*; *see also* DE 168-12 ("State Court Op.").) Judge Berdote-Byrne denied Mr. Farah's motion to reconsider on January 28, 2020, (*see* DE 190-2 ("State Court Reconsideration Op.")), and entered final judgment in favor of Chase on February 19, 2020, (DE 188-1.)

Separately, on April 10, 2015, Mr. Farah filed this action. (DE 1.) He essentially alleged that (1) WaMu engaged in wrongdoing in originating the 2006 and 2008 loans; (2) there were technical errors with the Purchase and Assumption Agreement between Chase and FDIC that transferred Mr. Farah's WaMu mortgage to Chase; (3) the defendants engaged in fraudulent assignments of the 2006 loan; and (4) the defendants fraudulently securitized

---

[1] Chase sought to foreclose initially in February of 2014, but that claim was administratively terminated without prejudice in New Jersey state court for want of prosecution. (DE 193 at 3–4.) Chase reinstated that suit in 2016, but voluntarily discontinued it in February of 2018. (*Id.* at 4.) It then finally brought the last foreclosure action in May of 2018.

the 2006 loan. (DE 193 at 15.) After the parties completed fact discovery, defendants filed a motion for summary judgment, which I granted. I concluded that Judge Berdote-Byrne's July 15, 2019 opinion gave rise to claim preclusion of the issues in this action and that the entire controversy doctrine required Mr. Farah to have brought his claims in the state court proceeding. (DE 193 at 16–20.) I also found in the alternative that collateral estoppel (issue preclusion) effectively barred Mr. Farah's claims. (DE 193 at 24–29) Finally, and also in the alternative, I ruled that Mr. Farah's claims failed variously because they were barred by: the administrative exhaustion requirements of FIRREA, the statute of limitations, a lack of any discernible injury to Mr. Farah, lack of technical errors in the Purchase and Assumption Agreement, lack of proof of fraud, and lack of standing to challenge the use of the mortgage in a securitization. (*Id.* at 32–36.)

## II. Discussion
### a. Legal standard

In the District of New Jersey, motions for reconsideration are governed by Local Civil Rule 7.1(i). Reconsideration is an "extraordinary remedy," to be granted "sparingly." *NL Indus. Inc. v. Commercial Union Ins. Co.*, 935 F. Supp. 513, 516 (D.N.J. 1996). Generally, reconsideration is granted in three scenarios: (1) when there has been an intervening change in the law; (2) when new evidence has become available; or (3) when necessary to correct a clear error of law or to prevent manifest injustice. *See North River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995); *Max's Seafood Café ex rel. Lou–Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999) (internal citation omitted); *see also Crisdon v. N.J. Dep't of Educ.*, 464 F. App'x 47, 49 (3d Cir. 2012) ("The purpose of a motion for reconsideration … is to correct manifest errors of law or fact or to present newly discovered evidence.") (internal citation omitted); *Carmichael v. Everson*, 2004 WL 1587894, at *1 (D.N.J. May 21, 2004). "The Court will grant a motion for reconsideration only where its prior decision has overlooked a factual or legal issue that may alter the disposition of

3

the matter." *Andreyko v. Sunrise Sr. Living, Inc.*, 993 F. Supp. 2d 475, 478 (D.N.J. 2014).

### b. Analysis

In his motion for reconsideration, Mr. Farah claims that he has discovered new evidence and that I committed a clear error of law which resulted in manifest injustice. He asserts three arguments: (1) his right to due process was violated because he was not allowed to depose representatives of LaSalle Bank National Association ("LaSalle"); (2) the defendants falsely represented that Judge Berdote-Byrne's final judgment was a final order; and (3) he has discovered new evidence in the form of a Truth in Lending Certificate for one of his loans.

### i. Mr. Farah's Inability to Depose Representatives of LaSalle

Mr. Farah alleges a conspiracy among the defendants and their attorneys to prevent him from conducting discovery against LaSalle. These allegations are entirely unsupported and provide no reason for me to reconsider my previous ruling.

Notably, Mr. Farah's inability to engage in discovery against LaSalle was not due to a conspiracy amongst the defendants, but rather to the manner in which Mr. Farah pled his case. Mr. Farah brought his suit against LaSalle "as trustee for the WAMU Mortgage Pass-Through Certificates Series 2006-AR7 Trust [(the "WAMU Trust")]" (*see* DE 1 (Complaint); DE 39 (Amended Complaint)). He did not sue LaSalle in its individual capacity. *See Fox Rothschild, L.L.P. v. Alanwood Trust*, 2009 WL 614457 at *8 (App. Div. Mar. 12, 2009) (suit against individual and against individual as trustee are separate claims and do not give notice of one another); *Soveral v. Franklin Trust*, 1991 WL 160339 at *3 (D.N.J. Aug. 12, 1991) (same); N.J. Stat. Ann. 3B:14-33; Fed. R. Civ. P. 17(b). As Judge Hammer explained in his order denying Mr. Farah's motion for default against LaSalle, because LaSalle was never pled as a defendant in its individual capacity, it was never subject to discovery. (DE 178.) The WAMU Trust, which was in fact pled as a defendant, however, fully

4

participated in the case and complied with all applicable discovery orders. (DE 177 ("the trust has been represented throughout this matter, and has fully and exhaustively responded to Plaintiff's discovery demands and appeared for a deposition through Chase, the current servicer on behalf of the Trust.").)[2]

My decision will not be reversed because Mr. Farah did not obtain discovery to which he was not entitled. Even assuming *arguendo* that Mr. Farah would have been entitled to discovery against LaSalle in its individual capacity, there is no showing sufficient to require that I reverse my prior decision. Mr. Farah was well aware that he could not pursue this discovery even before Judge Hammer entered his order on October 17, 2019 (DE 178), to say nothing of my own order on May 18, 2020. It is therefore not "new evidence" that arose or was discovered after I entered that order. I therefore reject this first asserted basis for reconsideration.[3]

### ii. Finality of Judge Berdote-Byrne's Order and Claim Preclusion

One of the alternative bases of my prior opinion was claim preclusion, based on an order of Judge Berdote-Byre that purported to be final (though not subject to appeal). Mr. Farah asserts that Judge Berdote-Byrne's order was not in fact final because he filed numerous post-judgment motions after the court's entry of final judgment, including a motion to reconsider, a motion to vacate, a motion to dismiss for lack of subject matter jurisdiction, and a motion to vacate a writ of execution. This argument does arise from matters post-dating my prior order, including the dismissal of a state court appeal on grounds of lack of finality, because those post-judgment motions were pending.

---

[2] I do not suggest, by the way, that suing LaSalle as trustee constituted any sort of legal or strategic error. Indeed, there is a certain logic to it, given the nature of the claims.

[3] Mr. Farah also calls for an investigation of the defendants' attorneys for, according to him, engaging in "fictitious representation of LaSalle." (MTR at 7.) He seems to mean that the attorneys committed misconduct in representing LaSalle as trustee, rather than in its individual capacity. For the reasons expressed above, there is no indication of wrongdoing, because Mr. Farah himself sued LaSalle as trustee.

5

My prior opinion relied in part on claim preclusion, which bars parties from "relitigating issues that were or could have been raised" in a prior suit. *Watkins v. Resorts Int'l Hotel and Casino, Inc.*, 591 A.2d 592, 599 (N.J. 1991).[4] That doctrine, however, requires that the previous dispute between the parties have been resolved by a final judgment on the merits. *Id.* My opinion also relied on the entire controversy doctrine, which is "New Jersey's specific, and idiosyncratic, application of traditional res judicata principles" and which requires that parties "present in [one] proceeding all of their claims and defenses that are related to the underlying controversy," thus requiring them to bring "all affirmative claims that they might have against another party, including counterclaims and cross-claims." *Rycoline Prods.v. C & W Unlimited*, 109 F.3d 883, 885–86 (3d Cir. 1997). Under that doctrine, "[n]on-joinder of claims . . . required to be joined by the entire controversy doctrine shall result in the preclusion of the omitted claims." *Id.* at 885. Like claim preclusion, the entire controversy doctrine applies only when the "first action has been concluded," or has gone to final judgment. *Id.* at 889; *see also Youssef v. Dep't of Health & Senior Servs.*, 423 Fed. Appx. 221, 223 (3d Cir. 2011) (entire controversy doctrine applies only when previous litigation has gone to final judgment); *Shimko v. Marter*, 2015 N.J. Super. Unpub. LEXIS 2719 at *7–8 (App. Div. Nov. 25, 2015) ("The doctrine generally only applies to cases that have been litigated to conclusion, either to final judgment or settlement; it does not require dismissal when multiple actions are pending simultaneously."); *Kaselaan & D'Angelo Assocs. v. Soffian*, 290 N.J. Super. 293, 301 (App. Div. 1996).

Mr. Farah initially claimed that new evidence supported his claim that Judge Berdote-Byrne's decision became un-final as a result of his filing of post-judgment motions, citing the following:

---

[4] The preclusive effect of a state court judgment in a subsequent federal action is governed by the law of the state that adjudicated the prior action. *Greenleaf v. Garlock, Inc.*, 174 F.3d 352, 357 (3d Cir. 1999). Here, that law is New Jersey law.

> (1) A letter dated May 29, 2020 issued by a clerk of the New Jersey Appellate Division which requested that the parties clarify whether Judge Berdote-Byrne's order was final in light of the remaining proceedings before the trial court; and
>
> (2) An order from the Appellate Division dated July 23, 2020, which states that Mr. Farah's "appeal is dismissed as interlocutory without prejudice to the filing of a new appeal by either party once the trial court proceedings are completed and thereby final."

(DE 196-4; DE 199 at 10.) Both of these documents post-date my May 20, 2020 decision.

On September 24, 2020, the Appellate Division filed a response to Mr. Farah's request for clarification. The Appellate Division "concluded that the subject Trial Court Order is not a final order," but on the other hand stated that "the judgment of foreclosure is unaffected." It went on to state that "defendants may pursue an appeal once the trial court disposes of their post-judgment motions." (DE 198; DE 198-1.)

Some courts have concluded that the fact that a judgment cannot be appealed means that it is not "final" for the purpose of claim preclusion. *In re Brown*, 951 F.2d 564, 569 (3d Cir. 1991) ("claim preclusion . . . require[s] the entry of a judgment, final in the sense *of being appealable*.") (emphasis added). This rule has the benefit of simplicity; finality for purposes of appeal and claim preclusion are thus subject to the same rule. The Appellate Division's July 23 and September 24, 2020 letters, at a minimum, clarify that under New Jersey state law it would not regard the judgment as final until Mr. Farah's then-pending post-judgment motions before Judge Berdote-Byrne had been decided.

In response to Mr. Farah's reconsideration motion, I requested that the parties update me as to the status of those post-judgment motions. It appears that they have now been decided. Judge Berdote-Byrne rejected Mr. Farah's motions as "subsequent and repetitive," concluding they were "meritless." (DE 201 Exh. A.) She explained that Mr. Farah had been afforded an opportunity to "in good faith . . . produce additional facts not already provided in [his] motion for reconsideration" but that he had abused that opportunity by submitting

7

meritless motions rehashing the same arguments that Mr. Farah had made previously. *Id.* The Judge, evidently tired of Mr. Farah's efforts to repeatedly forestall the conclusion of litigation with repetitive filings seeking to reopen matters already decided, awarded fees and costs against him in favor of Chase. The judge declared that "[a]t some point, litigation must end." *Id.*

Judge Berdote-Byrne could not have been clearer. Whether rightly or wrongly (and Mr. Farah is, of course, free to pursue an appeal in the state system), she has declared that her decision is final and that no further challenges will be entertained. In disposing of Mr. Farah's post-judgment motions, she has eliminated any possible reason to doubt the finality of her judgment.

Mr. Farah now asserts that he has filed a "Motion for Clarification" before Judge Berdote-Byrne which "seeks explanatory information to answer a number of errors of facts, and clarification of legal reasoning in the reference orders based on errors of facts." (DE 202.) I set aside the issue of whether such daisy-chaining of motions to reconsider denial of reconsideration is authorized under the New Jersey Court Rules. I see no reason why a motion simply asking that the trial judge further explain her very final decision robs it of finality. Thus, I conclude that the final judgment, which is now appealable, is final for the purposes of res judicata and the entire controversy doctrine.

The state court judgment on which I based my prior claim preclusion ruling stands entirely intact. There is therefore no basis for reconsideration based on new evidence or matters overlooked in that prior decision.

### iii.   Finality of Judge Berdote-Byrne's Order and Issue Preclusion

In the alternative, we may set aside the doctrines of claim preclusion and the entire controversy rule. My alternative ruling, based on issue preclusion, is unaffected. Issue preclusion, or collateral estoppel, does not operate at the level of decided claims; rather, it works to bar re-litigation of individual issues which have been fully litigated and actually determined in a prior action. *Tarus v. Pine Hill*, 189 N.J. 497, 520 (2007). Unlike claim preclusion, issue preclusion does not require a prior final judgment. "Unlike claim preclusion, the effectiveness of

issue preclusion, sometimes called collateral estoppel, does not require the entry of a judgment, final in the sense of being appealable." *Brown*, 951 F.2d at 569. Indeed, "collateral estoppel applies whenever an action is 'sufficiently firm to be accorded conclusive effect.'" *Hills Dev. Co. v. Township of Bernards*, 510 A.2d 621, 652 (N.J. 1986). Simply put, the question for issue preclusion is whether "a party has had his day in court on an issue." *State v. K.P.S.*, 112 A.3d 579, 585 (N.J. 2015).

Judge Berdote-Byrne, to say the least, has been "sufficiently firm" in her rulings. She has entered summary judgment against Mr. Farah. She has reaffirmed that ruling in response to Mr. Farah's post-judgment motions, and awarded costs based on his repetitive reassertion of rejected grounds. Even at the time of my prior decision, as I noted, Mr. Farah had enjoyed a "full and fair opportunity to litigate his claims of fraud, taking full advantage of the plenary procedures of the state court." (DE 193 at 28.) Judge Berdote-Byrne's orders, even at the time, were sufficiently firm to have issue-preclusive effect. And, as set forth thoroughly in my previous opinion, all of Mr. Farah's claims in this action are just as much defeated by issue preclusion as they were by claim preclusion and the entire controversy doctrine. (DE 193 at 29 ("The facts as found by the state judge doom [Mr.] Farah's claims against [defendants], because in each case the essential harm consists of acts that allegedly placed Chase in a position to enforce a mortgage it did not own–which Judge Berdote-Byrne found was not the case.")

Judge Berdote-Byrne's orders, sufficiently firm at the time of my prior order, have now again been reaffirmed. There is no basis for reconsideration of my prior opinion that issue preclusion bars this action.

### iv.   Truth in Lending Forms

Mr. Farah argues that his discovery of new evidence in the form of certain Truth in Lending forms[5] requires that I revisit and reverse my prior

---

[5] According to Mr. Farah, the Truth in Lending Forms were in the possession of the Chicago Title Company since 2008 but were only recently discovered. (Reply at 11.)

opinion. He argues, in essence, that this discovery revives arguments he has pursued throughout this litigation: (1) that the absence of Truth in Lending documents for the second note suggested the note was forged; (2) that Chase's foreclosure complaint did not attach a copy of the note; (3) that the note lacked an adequate certification; (4) that Chase has lost its right to collect on the original note; (5) his discovery of these new documents confirms that the Purchase and Assumption Agreement relied upon by Chase to gain ownership of the note is no more than an "agreement to agree"; and (6) Chase was required to include a receiver's deed or receiver's bill of sale in its complaint and to provide evidence of a note transfer with an endorsement by the FDIC as receiver. (Reply at 9, 14; MTR at 9.) As the foregoing description of these arguments reveals, they largely have nothing to do with the Truth in Lending forms.

As for the Forms themselves, they do not suggest that I should reverse my prior decision. Mr. Farah has not given much in the way of explanation as to how the newly discovered forms require reconsideration. He does assert that the existence of the forms for only one note (and their absence as to the other) indicates that the defendants have been using a fraudulent note to foreclose on his property. However, as noted in my previous opinion, Judge Berdote-Byrne concluded that it was not material whether one of the notes was illegitimate. She noted that both the purportedly illegitimate note and the note that Mr. Farah asserts is legitimate contain precisely the same terms, and that no defendant ever sought to recover on both notes. (State Court Op. at 9–10.) Thus, Mr. Farah never faced competing liabilities, or liabilities which were greater than he would have owed otherwise, as a result of the multiple notes, and as such has faced no injury or damages. (*Id.*) Judge Berdote-Byrne similarly considered and rejected the fraud allegations raised by Mr. Farah in his motion. (*See* DE 193 at 25.) Whether those conclusions are right or wrong, I give them preclusive effect.

Mr. Farah also claims that if the mortgage note is fraudulent, then defendants lacked standing to enforce the note against him. (Reply at 9–10.)

However, as Judge Berdote-Byrne concluded, defendants recorded the assignment of the mortgage, which is an alternative basis for standing under New Jersey law. (State Court Reconsideration Op. at 5 (citing N.J.S.A. 46:18-13 (holder of mortgage is "record holder of the mortgage as established by the latest record of assignment") and *Deutsche Bank Trust Co. Ams. v. Angeles*, 428 N.J. Super. 315, 318 (App. Div. 2012) ("either possession of the note or an assignment of the mortgage that predated the original complaint conferred standing")); *see also* (State Court Op. at 8 (Chase "may also claim standing as the last recorded assignee of the mortgage")). In short, the issue has been decided.

Mr. Farah renews his oft-repeated assertions regarding the Purchase and Assumption Agreement, Chase's failure to attach a receiver's deed or receiver's bill of sale to its complaint, Chase's failure to attach a copy of the note to its foreclosure complaint, the lack of an adequate certification for the note, and Chase's failure to provide evidence of a note transfer which included an endorsement by the FDIC as receiver, and so on. (Reply at 9, 14; MTR at 9) These arguments are not based on new evidence and thus are not properly raised in a motion to reconsider. *North River Ins. Co.*, 52 F.3d at 1218. Additionally, they have already been addressed and determined by Judge Berdote-Byrne, who concluded they are meritless, and they are thus subject to issue preclusion. (State Court Op. at 8–12)

### III. Conclusion

For the reasons set forth above, I will deny Mr. Farah's motion (DE 195) for reconsideration.

An appropriate order follows.

Dated: February 3, 2021

/s/ Kevin McNulty
_____
**Kevin McNulty**
**United States District Judge**

11